## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-81363-CIV-ALTMAN

**BLANCHE DIXON** *and* **ROY J. DIXON, JR.**,

      *Plaintiffs*,

*v.*

**EPIQ CORPORATE RESTRUCTURING, LLC**,
*et al.*,

      *Defendants.*

_____/

### ORDER

Blanche and Roy Dixon—litigants in several Florida state-court cases[1]—have sued the Clerk of the Palm Beach Courts (the "Clerk") and Ericka Chase (the buyer of their foreclosed home) for what the Dixons characterize as "heinous" and "egregious" constitutional violations.[2] *See* Third Am. Compl. [ECF No. 191]. The Defendants filed a Motion to Dismiss (the "Motion") [ECF No. 193], after which Chase was voluntarily dismissed from the case, *see* Notice of Voluntary Dismissal [ECF No. 195]; Order Dismissing Party [ECF No. 198]. As to Chase, then, the Motion is **DENIED as moot**.

With respect to the Clerk, the Dixons ask us—not for the first time—to intervene in a state-court case that's been closed since 2015, to overturn the state judges' decisions, and to compel the

---

[1] The relevant state-court case is an employment matter Mr. Dixon filed twice. *See Roy Dixon v. Bd. of Cnty. Comm'rs, Palm Beach Cnty.*, Case No. 2012-ca-022556 (Fla. Palm Beach Cnty. Ct. Dec. 11, 2012); *Roy Dixon v. Bd. of Cnty. Comm'rs, Palm Beach Cnty.*, Case No. 2014-ca-014168 (Fla. Palm Beach Cnty. Ct. Nov. 26, 2014). Note (as a prelude to our standing discussion) that Mrs. Dixon was not involved in either case. One more thing: The operative Third Amended Complaint also discusses a separate foreclosure action a third party filed against both Dixons. *See Green Tree Serv., LLC v. Roy J. Dixon, et al.*, Case No. 2014-ca-013158 (Fla. Palm Beach Cnty. Ct. Oct. 28, 2014). But this latter case appears to be unrelated to the due-process claim the Dixons have advanced here against the Clerk.

[2] This case originally included various claims against several other defendants, all of whom have been dismissed. *See generally* Docket.

Clerk (and the state court) to act on their behalf. But there are four major problems with the Dixons' Amended Complaint. *First*, as we've foreshadowed, Mrs. Dixon lacks standing to pursue her only remaining claim. *Second*, even as to Mr. Dixon, *at least* half of his claim is barred by the *Rooker-Feldman* doctrine.[3] *Third*, as to the half of his claim that *Rooker-Feldman* might not bar, Mr. Dixon has missed, by a significant margin, the four-year statute of limitations. *Fourth*, and in any event, the Dixons' official-capacity claim fails the test the Supreme Court laid out for suits against governmental entities in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). We thus **GRANT** the Clerk's Motion and **DISMISS** the Dixons' complaint **without leave to amend**.

## OUR SOURCES

We begin with a word about our sources. Normally, on a motion to dismiss, we'd constrain our analysis to the four corners of the complaint. Here, though, we'll consider the dockets in the Dixons' state-court cases—and the documents the various parties filed on those dockets—because they're "inextricably intertwined" with the claims before us. Federal Rule of Evidence 201 permits a federal court to take judicial notice of state-court records because, generally, those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED. R. EVID. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Id.* "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). We'll therefore allow this Order to serve as notice of our intent to take

---

[3] The doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

judicial notice of the state-court dockets. If the Dixons object to this decision, they may note that objection in a motion for reconsideration. Any such motion must be filed **within 28 days** of this Order and **may be no more than five pages in length**. If the motion for reconsideration is late or exceeds **five pages**, it will be stricken for non-compliance.

### THE FACTS

The Dixons' claim arises from a state-court action. *See Roy J. Dixon v. Bd. of Cnty. Comm'rs, Palm Beach Cnty.*, Case No. 2012-ca-022556 (Fla. Palm Beach Cnty. Ct. Dec. 11, 2012) (the "Employment Case").[4] In that case, Mr. Dixon sued the Palm Beach County Board of County Commissioners and the Palm Beach County Parks and Recreation Department for (what he claimed was) retaliatory firing in violation of Florida's Whistle-Blower's Act. *See* Original Compl. [Employment Doc. No. 5]. After the defendants moved for summary judgment, *see* Motion [Employment Doc. No. 57], Mr. Dixon filed a series of motions asking the court to strike the summary-judgment motion as a sanction for (what he insisted was) fraud on the court. *See* Motions to Strike [Employment Doc. Nos. 64, 72]. Over the course of two days, the court held an evidentiary hearing on the merits of the Mr. Dixon's sanctions motions. *See* Order Continuing Evidentiary Hearing [Employment Doc. No. 108]. As relevant here, on the morning of the second day, Mr. Dixon filed a document he captioned "Supplemental Forensic Emails Evidence Demonstrating Defendant Has Been Engaging in Fraud on the Court: With Attached Exhibits #1–#23 In Support." Notice of Filing [Employment. Doc. No. 121] (errors in original).[5] In the claim they've brought here, the Dixons allege that they had just received the Forensic Evidence from their expert that morning. *See* Third Am. Compl. ¶ 7. Later that afternoon, Mr. Dixon filed a motion for a continuance, asking the court for a third day of hearings because (he said) the

---

[4] We'll cite docket entries from the Employment Case as ["Employment Doc. No. __"]. And, because the Fourth DCA doesn't number its docket entries, we'll cite the filings in the subsequent appeal as ["Appeal Doc. [date]"].

[5] We'll call this the "Forensic Evidence."

expert who could "validate the authenticity of the emails produced during [the expert's] e-discovery inspection [*i.e.*, the Forensic Evidence]" wasn't available to testify on either of the first two days of the hearing. *See* Motion for Continuance [Employment Doc. No. 113]. The state court denied Mr. Dixon's continuance request. *See* Order Denying Continuance [Employment Doc. No. 116].

A few days later, the state court denied Mr. Dixon's sanctions motions on the merits, *see* Omnibus Order [Employment Doc. No. 118], and granted the defendants' motion for summary judgment, finding that Mr. Dixon's claims were barred by the doctrine of *res judicata*, s*ee* Order Granting Summary Judgment [Employment Doc. No. 117]. In so holding, the state court noted that Mr. Dixon had previously filed virtually identical whistleblower claims in no fewer than *five* other federal cases,[6] all of which had been dismissed—and one of which the Eleventh Circuit had already affirmed on appeal.[7] *Id.* at 2–3. Mr. Dixon filed a motion for rehearing on one of his sanctions motions, *see* Motion for Rehearing [Employment Doc. No. 121], which the court quickly denied, *see* Order Denying Rehearing [Employment Doc. No. 126]. An appeal followed. *See Roy J. Dixon v. Bd. of Cnty. Comm'rs, Palm Beach Cnty.*, Case No. 4D13-4045 (Fla. 4th DCA Oct. 29, 2013).

While Mr. Dixon's case was on appeal, he discovered (on April 7, 2014) that the "92 pages of forensic evidence wasn't transferred to the 4th DCA as part of the record on appeal and [he thus] filed a Motion in the 4th DCA Court of Appeals [sic] . . . requesting the appellate court to instruct [the Clerk] to transfer the omitted 92 pages of forensic evidence to the appellate court." Third Am. Compl.

---

[6] *See Dixon v. Bd. of Cnty. Comm'rs Palm Beach Cnty., Fla., et al.*, 2011 WL 13225173 (S.D. Fla. Mar. 1, 2011) (Ryskamp, J.); *Dixon v. Palm Beach Cnty. Parks & Recreation Dep't, et al.*, Case No. 11-80448 (S.D. Fla. July 26, 2011) (Ryskamp, J.); *Dixon v. Palm Beach Cnty. Bd. of Cnty. Comm'rs, et al.*, Case No. 12-80008 (S.D. Fla. Jan. 30, 2012) (Middlebrooks, J.); *Dixon v. Bd. of Cnty. Comm'rs, Palm Beach Cnty., et al.*, Case No. 12-80442 (S.D. Fla. Aug. 2, 2012) (Ryskamp, J.); *Dixon v. Bd. of Cnty. Comm'rs for Palm Beach Cnty.*, 2014 WL 2938350 (S.D. Fla. June 20, 2014) (Marra, J.).
[7] *See Dixon v. Bd. of Cnty. Comm'rs, Palm Beach Cnty., Fla., et al.*, 518 F. App'x 607 (11th C. 2013) (affirming on the merits the district court's dismissal of Mr. Dixon's case *with prejudice* because, the court said, Mr. Dixon's complaint was barred by *res judicata*).

¶ 14. In all, Mr. Dixon would end up filing *six* motions to supplement the record.[8] *See generally* Appeal Docket. The Fourth DCA granted three of these motions, *see* Orders Granting Motions to Supplement [Appeal Docs. June 23, 2014; Sept. 22, 2014; Oct. 24, 2014], and denied the rest, *see* Orders Denying Motions to Supplement [Appeal Docs. Aug. 19, 2014; Jan. 8, 2015 (denying two motions)]. Mr. Dixon hasn't told us—nor can we tell from the docket—which of these motions relates specifically to the Forensic Evidence.

Ultimately, the Fourth DCA summarily affirmed the trial court's denial of Mr. Dixon's motion for sanctions. *See Roy Dixon v. Bd. of Cnty. Comm'rs, Palm Beach Cnty.*, 158 So. 3d 596, 596 (Fla. 4th DCA 2015). Mr. Dixon filed a motion for rehearing *en banc*, *see* Motion for Rehearing [Appeal Doc. Jan. 21, 2015], which the Fourth DCA denied, *see* Order Denying Rehearing [Appeal Doc. Feb. 24, 2015]. The Fourth DCA's mandate issued on March 13, 2015, *see* Mandate [Appeal Doc. Mar. 13, 2015], and the court denied Mr. Dixon's motion to recall it, *see* Motion to Recall [Appeal Doc. Apr. 28, 2015]; Order Denying Recall [Appeal Doc. May 18, 2015].

But the Dixons weren't done yet. Five years later, in August of 2020, they filed this federal case, *see* Compl. [ECF No. 1], which they've since amended *four* separate times, *see* Am. Compl. [ECF No. 36]; Verified Am. Compl. [ECF No. 38]; Second Am. Compl. [ECF No. 139]; Third Am. Compl. [ECF No. 191]. The Amended Complaint—filed in October 2020—was the first to advance constitutional claims against the Clerk.[9] In their sole remaining claim, the Dixons allege that the Clerk violated Mr. Dixon's due-process rights by "suppressing 92 pages of forensic evidence on the circuit

---

[8] These came in on May 27, 2014 (amended on May 29, 2014); July 31, 2014; September 15, 2014; October 7, 2014; December 8, 2014; and December 16, 2014.

[9] When the Plaintiffs first filed this lawsuit, Sharon Bock was the Clerk. During the life of this litigation, though, Bock's tenure ended, and Joseph Abruzzo became the Clerk. As Bock's successor, Abruzzo was automatically substituted as a party to this case. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* Omnibus Order [ECF No. 189] (acknowledging Abruzzo's substitution).

court docket" and by "heinously and egregiously [not transferring] the 92 pages of forensic evidence to the 4th district Court of Appeals [sic] as part of the record on appeal." Third Am. Compl. ¶ 57 (errors in original). As redress, the Dixons seek an order of default judgment against the Clerk—plus compensatory and punitive damages. *Id.* at 12. The Dixons also ask (though, confusingly, not in their prayer for relief) that we (a) "issue an Order for Defendant Joseph Abruzzo to transfer the suppressed 92 pages of forensic evidence to the 4th District Court of Appeals [sic] and to instruct the appellate court to reopen the case and correct the record pursuant to FRAP Rule 9.200(f)(2)," *id.* ¶ 11; and (b) "issue an Order instructing [the Clerk] to grant the Clerk's default against Philip Johnsey for his failure to respond to the amended complaint,"[10] *id.* ¶ 13.

## THE LAW

Under Federal Rule of Civil Procedure 12(b), a complaint may be dismissed for one of seven defects. Two such defects are relevant here: the lack of subject-matter jurisdiction (Rule 12(b)(1)) and the failure to state a claim (Rule 12(b)(6)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013). Challenges under Rule 12(b)(1) come in two forms: as "[f]acial attacks on the complaint[, which] require the court merely to look and see if the plaintiff has alleged a basis for subject matter jurisdiction," or as "[f]actual attacks [that] challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings and matters outside the pleadings[.]" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (cleaned up). "[A] factual attack challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings[.]" *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233–34 (11th Cir. 2008).

---

[10] Based on what we've seen in the Amended Complaint, it looks like Mr. Johnsey was a defendant in one of the Dixons' state-court cases.

"In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to adjudicate the case." *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1315 (S.D. Fla. 2011) (Altonaga, J.). In the case of factual attacks, the plaintiff's allegations don't enjoy a presumption of validity, and "the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *see also Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

When we adjudicate a motion to dismiss under Rule 12(b)(6), we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level"— with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient, standing alone, to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (cleaned up), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

When the defendant challenges the complaint under *both* Rules 12(b)(1) and 12(b)(6), we ask whether there's any overlap between the jurisdictional inquiry and the merits. "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claims under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Brownback v. King*, ___ U.S. ___, 141 S. Ct. 740, 749 n.8 (2021). But, where the "overlap between merits and jurisdiction may not exist," the district court "might lack subject matter jurisdiction for non-merits reasons, in

which case it must dismiss the case under Rule 12(b)(1)." *Id.* The district court should "rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction *do not implicate the merits of the plaintiff's cause of action.*" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (cleaned up).

The Dixons filed their complaint *pro se.* A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("We also construe the complaint liberally because it was filed *pro se.*"); *cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Although we treat *pro se* litigants with some leniency, "this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *2 (11th. Cir 2021) (quoting *GJR Inv., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). The requirement that "a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face . . . also applies to *pro se* complaints." *Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016); *see also Saunders*, 766 F.3d at 1266 (recognizing that *Twombly* and *Iqbal* apply to *pro se* complaints).

## ANALYSIS

### I.     Standing

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). Standing is the "irreducible minimum required by the Constitution" for a plaintiff to proceed in federal court. *Ne. Fla. Chapter, Assoc'd Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 664 (1993). To establish their standing

to sue, the Dixons must show (1) an "injury-in-fact," (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant," and (3) "that the injury will be redressed by a favorable decision." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

Mrs. Dixon fails to establish her standing at the first step. In their due-process claim, the Dixons allege that the Clerk "violated Plaintiff *Mr. Dixon's* Constitutional Due Process rights" and that "Plaintiff *Mr. Dixon* has suffered a significant Deprivation of Due Process Rights." Third Am. Compl. ¶¶ 57–58. But the Dixons allege no injury to Mrs. Dixon, nor do they seek any relief on her behalf. *See generally id.* And this makes sense because, as we've noted (*q.v.* note 1), Mrs. Dixon wasn't even a plaintiff in the state-court cases the Dixons are here complaining about. Mrs. Dixon's due-process claim, then, is **DISMISSED** for lack of standing.

Mr. Dixon, by contrast, *has* satisfied his standing obligations at *both* step one (by alleging that he suffered an injury-in-fact when he was denied the "opportunity to be fairly and lawfully heard on appeal," Third Am. Compl. ¶ 16,) *and* step two (by suggesting that he lost the "opportunity to be fairly heard" *because* the Clerk suppressed the Forensic Evidence, *id.* ¶ 57). He's also met his burden at step three. Recall that step three "focus[es] on the requested relief." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S 118, 126–27 (2014). If there's no "connection between the alleged injury and the judicial relief requested," the injury isn't redressable. *Id.* As we've explained, Mr. Dixon seeks two forms of relief: (1) a default judgment against the Clerk, plus (2) compensatory and punitive damages. *See* Third Am. Compl. at 12. As to the latter, a favorable decision for Mr. Dixon *would* redress his injury. He's alleged that the Clerk harmed him by failing to include the full record on appeal. He wants money as recompense for that harm. That's sufficient to assert standing at this early stage of the litigation.

As to the former, though, the problem isn't so much one of standing as it is one of procedure. We've repeatedly denied the Dixons' motions for default judgment because, to put it simply, the Clerk

didn't default. *See* Orders Denying Motions for Default [ECF Nos. 128, 138, 150, 205]. More problematically, the "[p]laintiff's apparent attempt to seek default in [the complaint] is entirely improper in that it is wholly unsupported by any relevant documentation and contrary to the requirements of the Federal Rules of Civil Procedure." *4FLAC LLC v. Transcol, S.A.*, 2021 WL 680708, at *1 n.1 (S.D. Fla. Feb. 22, 2021) (Bloom, J.). We thus **DISMISS** Mr. Dixon's request for a default judgment.

One last thing. In fairness to Mr. Dixon, his complaint also appears to seek injunctive relief against the Clerk and the Fourth DCA. *See* Third Am. Compl. ¶ 11 (asking us to "issue an Order for Defendant Joseph Abruzzo to transfer the suppressed 92 pages of forensic evidence to the 4th District Court of Appeals [sic] and to instruct the appellate court to reopen the case and correct the record pursuant to FRAP Rule 9.200(f)(2)"). The second part of this request—which asks us to "instruct the appellate court . . . ."—we dismiss for two reasons. *One*, the Fourth DCA isn't a party to this case, so we can't order it to do anything. *See Estimar v. Sergeant Sims et al.*, 2016 WL 11695474, at *2 (S.D. Fla. Nov. 21, 2016) (White, Mag. J.) ("Generally, the person from whom injunctive relief is sought must be a party to the underlying action." (citing *In re Infant Formula Antitrust Litig.*, 72 F.3d 842, 842 (11th Cir. 1995) (affirming the district court's denial of injunctive relief against nonparties because the district court lacked authority to enjoin entities that hadn't been sued))), *report and recommendation adopted*, 2016 WL 11695473 (Dec. 16, 2016) (Dimitrouleas, J). *Two*, even if the Fourth DCA were a party, *Rooker-Feldman* (as we're about to see) would preclude us from ordering that court to reverse its prior decision denying Mr. Dixon's motion to supplement. *See Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021) ("[*Rooker-Feldman*] bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else."). As to the first part of this injunctive request, though (the part that seeks an injunction against the Clerk), we conclude that Mr. Dixon done enough—at this early phase of the case—to assert his standing to pursue that

injunction.

## II.     The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012). The rule "follows naturally from the jurisdictional boundaries that Congress has set for the federal courts": *first*, that "federal district courts are courts of original jurisdiction," which "generally cannot hear appeals"; and, *second*, that "only the Supreme Court can reverse or modify state court judgments." *Behr*, 8 F.4th at 1210 (cleaned up). Under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). "Allowing federal district courts to alter or directly review the judgment of state courts would violate both of those jurisdictional grants." *Behr*, 8 F.4th at 1210. In other words, the doctrine "means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Id.* at 1212.

*Rooker-Feldman* is "confined" to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of these judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It's thus "a narrow jurisdictional doctrine," *Behr*, 8 F.4th at 1208, that "will almost never apply," *id.* at 1212. Indeed, *Rooker-Feldman* is not "a one-size-fits-all preclusion doctrine for a vast array of claims relating to state court litigation." *Id.* at 1208. At the same time, the doctrine "also does not prioritize form over substance." *Id.* at 1211. "It [thus] bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Id.* And, while courts often misapply the doctrine, *id.* at 1211 (noting our Circuit's "overcomplicat[ion]" of *Rooker-Feldman*), the Eleventh Circuit has recently clarified that

*Rooker-Feldman* presents "a simple inquiry" into "whether the plaintiff's claim directly challenged a state court loss," *id.*

A claim "[can]not be pursued [when] it is 'inextricably intertwined with [the state court's] decisions, in judicial proceedings, to deny plaintiffs' petitions.'" *Exxon*, 544 U.S. at 286 (quoting *Feldman*, 460 U.S. at 486–87). A claim is "inextricably intertwined" if the federal court's decision would have the effect of nullifying the state-court decision, *see Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citing *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)), or if the claim "succeeds only to the extent that the state court wrongly decided the issues," *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). This "inextricably intertwined" analysis isn't a separate sub-doctrine of *Rooker-Feldman*; it's "merely a way of ensuring that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment." *Behr*, 8 F.4th at 1212.

When assessing the application of *Rooker-Feldman*, a "claim-by-claim approach is the right one" because the doctrine "requires a more targeted approach." *Id.* at 1213. For this reason, the Eleventh Circuit has admonished us to remember that "the claim for relief *does* matter." *Id.* at 1214. In other words, "[b]ecause *Rooker-Feldman* bars only claims that invite a district court's 'review and rejection' of a state court judgment, claims that seek only *damages* for constitutional violations of third parties—not relief from the judgment of the state court—are permitted." *Id.* (emphasis added). So, we must ask whether our plaintiff "seeks relief for violations that happened during the state court process," rather than the "rejection of the state court judgment" itself. *Id.* at 1213; *see also id.* (holding that the "claim that various defendants . . . discriminated against [plaintiffs] on the basis of gender, religious belief, and disability . . . falls outside *Rooker-Feldman*" because the plaintiffs sought money damages for constitutional violations that occurred in the state-court process and didn't ask for the "rejection of the state court judgment").

Given our obligation to take a targeted, claim-by-claim approach to the *Rooker-Feldman* inquiry, *see Behr*, 8 F.4th at 1213, we pause here to note something important about Mr. Dixon's claim: It's actually *two* distinct claims. What we'll call the first claim—which we'll address second—is Mr. Dixon's contention that the Clerk "suppress[ed] the 92 pages of forensic evidence on the circuit court docket under 'Notice' and [did not] transfer the 92 pages of forensic evidence to the 4th District Court of Appeals [sic] as part of the record on appeal." Third Am. Compl. ¶ 9. Although Mr. Dixon doesn't tell us *when* this suppression occurred, it seems reasonably clear that he's referring to the Clerk's compilation and transmission of the initial record on appeal—which the appellate court received on February 20, 2014. [Appeal Doc. Feb. 20, 2014]. The second claim—which we'll address first—is that "the 4th DCA heinously and egregiously denied the motion [to supplement] and, ruled a per curiam affirmed. In doing so violating Mr. Dixon's Due Process Rights . . . to be fairly and lawfully heard on appeal." Third Am. Compl. ¶ 16 (errors in original). As redress for this second claim, Mr. Dixon urges us to "issue an Order for Defendant Joseph Abruzzo to transfer the suppressed 92 pages of forensic evidence to the 4th District Court of Appeals [sic] and to instruct the appellate court to reopen the case and correct the record pursuant to FRAP Rule 9.200(f)(2)." *Id.* ¶ 11.

So, we have two claims: the first asking us to punish the Clerk for failing to submit the Forensic Evidence to the Fourth DCA in the first instance; the second asking us to override the Fourth DCA's denial of his motion to supplement the record with those same 92 pages of Forensic Evidence. As we can see, in this second claim at least, Mr. Dixon is asking us to overturn the Fourth DCA's denial of his motion to supplement the record. *See* Third Am. Compl. ¶ 11. Here, then, he's "directly challeng[ing] a state court loss," *Behr*, 8 F.4th at 1211—and so, *Rooker-Feldman* plainly bars this second claim.

Admittedly, *Rooker-Feldman* doesn't *typically* bar a claim when the parties in the state and federal cases aren't identical. *See, e.g., In re Hazan*, 10 F.4th 1244, 1250–51 (11th Cir. 2021) ("*Rooker-Feldman*

does not apply when the parties to the federal case are not the same as the parties to the state case."). But this general rule doesn't apply where, as here, the state-court loser names the state-court judge or the *state-court system* as the defendant in the federal action. *See, e.g.*, *Nash v. Fifth Dist. Ct. of Appeal*, 806 F. App'x 870, 872 (11th Cir. 2020) ("Liberally construed, Nash argues on appeal that, in her amended complaint, she identified two due-process violations arising from the state-court proceedings: (1) the entry of the foreclosure judgment before she could present her affirmative defenses; and (2) the judges' application of the law-of-the-case doctrine to bar her from presenting argument on that issue in her second appeal. The district court did not err by concluding that the *Rooker-Feldman* doctrine barred both of these claims."); *Tarver v. Reynolds*, 808 F. App'x 752, 754 (11th Cir. 2020) ("The district court was right that the *Rooker-Feldman* doctrine bars most (if not all) of Tarver's claims. Tarver repeatedly argued in state court that Judge Reynolds lacked jurisdiction under federal law to divide his disability benefits. He makes the same argument here. But Judge Reynolds repeatedly rejected this claim. And Alabama's appellate courts repeatedly affirmed Judge Reynolds's ruling. Success in this lawsuit hinges on whether those courts were wrong." (citations omitted)).

On the application of *Rooker-Feldman* to a state-court clerk, the Eleventh Circuit's decision in *Macleod v. Bexley*, 730 F. App'x 845 (11th Cir. 2018), is instructive. In that case, a plaintiff who had been declared a "vexatious litigant" under Florida law sued the clerk of Flagler County in federal court for refusing to accept and file the plaintiff's § 1983 complaint. *Id.* at 848.[11] The district court dismissed the claim, citing (among other things) *Rooker-Feldman*. *Id.* The plaintiff appealed, but the Eleventh Circuit affirmed, agreeing that, "under the *Rooker-Feldman* doctrine, the district court did not have jurisdiction to consider Macleod's complaint because it falls into the class of 'state-court losers

---

[11] Florida's Vexatious Litigant Law provides, in relevant part, as follows: "The clerk of the court shall not file any new action by a vexatious litigant pro se unless the vexatious litigant has obtained an order from the administrative judge permitting such filing." FLA. STAT. § 68.093(5).

complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon*, 544 U.S. at 284). And it didn't matter that Macleod had sued the clerk rather than the court because, "[a]lthough couched in different terms, Macleod essentially asks the federal courts to review the state court order." *Id.* So too here. By asking us to instruct the Clerk to give him the relief the Fourth DCA has already denied him, Mr. Dixon is a "state-court loser[ ] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon*, 544 U.S. at 284).[12]

We see the first part of Mr. Dixon's claim somewhat differently. The Clerk says that *Rooker-Feldman* bars this first claim, too, as a "direct challenge to the Fourth District Court of Appeal's decision in the appeal." Motion at 5. We disagree. That claim (it's true) likewise arises from the state-court proceedings. But its success doesn't *necessarily* "hinge on whether those [state] courts were wrong." *Tarver*, 808 F. App'x at 754. That's because the conduct the Dixons are here complaining about—the Clerk's omission of the Forensic Evidence from the record on appeal—*preceded* (and may not have been vindicated by) the Fourth DCA's later resolution of Mr. Dixon's motion to supplement.

To understand why, we need to look back at the timeline. On February 20, 2014, the Fourth DCA received the record from the Clerk. *See* Acknowledgement of Received Records [Appeal Doc. Feb. 20, 2014]. On April 7, 2014, Mr. Dixon "discovered the 92 pages of forensic evidence weren't transferred to the 4th DCA as part of the record on appeal[.]" Third Am. Compl. ¶ 14. Mr. Dixon then filed his six motions to supplement the record (three of which were granted, *see* Orders Granting Motions to Supplement [Appeal Docs. June 23, 2014; Sept. 22, 2014; Oct. 24, 2014], and three denied,

---

[12] As we've explained (*q.v.* Section I), to the extent that this second claim asserts a cause of action against the Fourth DCA itself, we dismiss it *both* because the Fourth DCA isn't a party here *and* under *Rooker-Feldman.*

*see* Orders Denying Motions to Supplement [Appeal Docs. Aug. 19, 2014; Jan. 8, 2015]). As we've said, we don't know which of these orders addressed the Forensic Evidence *directly*, but Mr. Dixon alleges that "the 4th District Court of Appeals [sic] heinously and egregiously denied the motion" to supplement the record with the Forensic Evidence. Third Am. Compl. ¶ 15.

We've already held that Mr. Dixon can't challenge the Fourth DCA's ruling on that motion to supplement. But this claim is slightly different: Here, Mr. Dixon seems to want money damages for something that happened *before* the court rejected his motion to supplement. Why does that matter? Well, because a motion to supplement under Florida law must be properly filed, and it must establish some material "error or omission in the record." FLA. R. APP. P. 9.200(f); *see also Thornber v. City of Walton Beach*, 534 So. 2d 754, 755 (Fla. 1st DCA 1988) ("This rule is intended to assure that any portion of the record before the lower tribunal which is material to a decision by the court be made available to the court so that appellate proceedings will be decided on their merits."). Had the Clerk included the Forensic Evidence in the record, that evidence (it's almost tautological to say) would've been included in the record. Since the Clerk failed to include that evidence, Mr. Dixon had to follow the strictures of Florida law to get that evidence in through a motion to supplement. In other words, he had to file a proper motion to supplement with the Fourth DCA that identified a material error or omission in the record. Given what we've seen of the Dixons' filings in this case, we think it reasonable to assume that Mr. Dixon's motion to supplement *might* have been denied, not because the Fourth DCA determined that the Clerk had rightly excluded the Forensic Evidence, but because Mr. Dixon's motion to supplement wasn't, for whatever reason, properly filed. It may have been too late. Or it may have been improperly docketed. Or it may have failed to explain, in clear and explicit language, how the Forensic Evidence was material to the appeal. And, if any of that's true, then the Clerk's failure to include the Forensic Evidence—which Mr. Dixon alleges deprived him of the right to be "fairly and lawfully heard on appeal," Third Am. Compl. ¶ 16—could've been a link in the chain of

events that led the Fourth DCA to deny his appeal. Viewed this way, Mr. Dixon's first claim doesn't seem to call the Fourth DCA's judgment into question at all.

Now, it may well be that the Fourth DCA *did* dispose of the motion to supplement on the merits—rather than on account of some technical deficiency in the filing. If that were the case, though, we would've expected the Clerk to say so—to attach, in other words, the specific ruling Mr. Dixon is here trying to overturn. But the Clerk hasn't done that. And since, at this stage, we must draw all reasonable inferences in favor of Mr. Dixon, we'll assume that the Fourth DCA didn't reject Mr. Dixon's motion to supplement on its merits—that, instead, it denied the motion to supplement because the motion was technically deficient in some way. When we do that, we have no choice but to deny the Clerk's *Rooker-Feldman* request—at least as it relates to the Clerk's misfeasance in compiling and submitting the appellate record in the first instance (the first claim). Still, as we've said, we **GRANT** the Motion to Dismiss as to the second claim (the one that explicitly challenges the Fourth DCA's ruling on the motion to supplement).

## III.   The Statute of Limitations

All that said, we dismiss Mr. Dixon's due-process claim against the Clerk because it's untimely. The statute of limitations for a § 1983 claim is determined by the state's residual personal-injury statute—which, in Florida, is four years. *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (per curiam) ("Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985."); *Ellison v. Lester*, 275 F. App'x 900, 901 (11th Cir. 2008) (reversing the district court's dismissal of a § 1983 complaint as untimely because the district court erroneously applied a one-year statute of limitations rather than the appropriate four-year limitations period); *see also* FLA STAT. § 95.11(3) (setting a four-year statute of limitations for, among other things, "any action not specifically provided for in these statutes"). That limitations period begins to run when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their

17

complaint and (2) who has inflicted the injury." *Chappell*, 340 F.3d at 1283 (citing *Mullinax v. McElhenny*, 817 F.2d 711, 716 (11th Cir. 1987)).

The Dixons knew all about the (allegedly) injurious conduct—and they knew precisely *who* had inflicted that injury—way back in 2014. As they explained in their complaint:

> On April 07, 2014, Plaintiff Mr. Dixon discovered the 92 pages of forensic evidence wasn't transferred to the 4th DCA as part of the record on appeal and filed a Motion in the 4th DCA Court of Appeals [sic] under Case NO.: 4D 13-4045 L.T. No.: 502012CA022556XX requesting the appellate court to instruct [the Clerk] to transfer the omitted 92 pages of forensic evidence to the appellate court pursuant to FRAP Rule 9.200(a)(1)(f)(2).

Third Am. Compl. ¶ 14 (errors in original). The statute of limitations, then, began to run on April 7, 2014, and the claim expired four years later—on April 7, 2018. The Dixons' case against the Clerk, first filed on October 8, 2020, *see* Am. Compl. [ECF No. 36], is thus two years too late. Because the Dixons' due-process claim is time-barred, we **GRANT** the Motion to Dismiss on any aspect of the claim that has survived the standing and *Rooker-Feldman* inquiries.

### IV.     Official Capacity

Even if the Dixons' claim weren't barred by the statute of limitations, we'd still dismiss it for failure to state a claim. The Dixons have sued the Clerk in his *official* capacity. *See, e.g.*, Third Am. Compl. at 1 (listing the Defendant as "Joseph Abruzzo, in his Official Capacity as successor of Sharon Bock, Clerk and comptroller of Palm Beach County" (errors in original)). When a government official is sued in his official capacity, we treat the claim as if it were brought against the governmental entity itself. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (noting that official-capacity claims are "simply another way of pleading an action against the entity of which an officer is an agent"). But a governmental entity isn't liable under § 1983 for the actions of its employees. *See Monell*, 436 U.S. at 694. Instead, a § 1983 plaintiff pursuing municipal liability "must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted

deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Guerra v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

The Dixons never allege that Palm Beach County implemented any "custom or policy" that resulted in the deprivation of their constitutional rights. *See generally* Third Am. Compl. On the contrary, their complaint is based entirely on the alleged failure of one individual, then-Clerk Sharon Bock, to submit the Forensic Evidence to the Fourth DCA. That's precisely the sort of *respondeat-superior* liability *Monell* proscribes. *See Monell*, 436 U.S. at 694. We thus **GRANT** the Motion to Dismiss as to any part of the Dixons' claim that has survived the standing, *Rooker-Feldman*, and statute-of-limitations bars.

## V.    Leave to Amend

The Defendants ask us to dismiss the Amended Complaint *with prejudice*. *See* Motion at 13. But we can't do that—at least not entirely. Although "a district court need not allow a plaintiff to amend a complaint if the amendment would not serve to cure the defective pleading," *Wittbold v. Miami-Dade Cnty.*, 2013 WL 3280039, at *6 (S.D. Fla. June 27, 2013) (Cooke, J.), a dismissal that's based on jurisdictional deficiencies must be *without* prejudice, *see Stalley*, 524 F.3d at 1232 ("[S]ince the district court did not have subject matter jurisdiction in this case, [the plaintiff's] complaint should have been dismissed without prejudice."); *see also Doane v. Tele Cir. Network Corp.*, 852 F. App'x 404, 408 n.2 (11th Cir. 2021) ("A dismissal for lack of standing, however, is a jurisdictional ruling that is entered without prejudice."). And—notably—a dismissal under *Rooker-Feldman* must likewise be without prejudice. *See Scott v. Frankel*, 606 F. App'x 529, 533 (11th Cir. 2015) ("[A] *Rooker-Feldman* dismissal is a dismissal for lack of subject matter jurisdiction, and '[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.'" (quoting *Stalley*, 524 F.3d at 1232); *see also Boda v. United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) (noting that dismissal "on jurisdictional

grounds . . . is without prejudice"). So, to the extent that the Dixons' claim is dismissed *either* for lack of standing *or* under *Rooker-Feldman*, it's **DISMISSED without prejudice**. For that part of the claim that's barred *either* by the statute of limitations *or* by *Monell*, we **DISMISS with prejudice**.

Either way, we dismiss *without leave to amend* because any further amendment would be futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Despite having amended their complaint four times overall and once in response to the Defendants' compelling *Rooker-Feldman*, *Monell*, and statute-of-limitations challenges—*see generally* Second Am. Compl. [ECF No. 139]; Motion to Dismiss Second Amended Complaint [ECF No. 164] (presenting the same statute-of-limitations, *Monell*, and *Rooker-Feldman* arguments we've reviewed here); Third Am. Compl.t [ECF No. 191]—the Dixons haven't been able to remedy their claim's many deficiencies.

Where (as here) "the district court would lack subject matter jurisdiction over" any future amended complaint, "amendment would be futile." *Johnson v. Regions Mortg.*, 503 F. App'x 810, 811 (11th Cir. 2013); *see also Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (holding that "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal" under *Rooker-Feldman*); *Blakenship v. Claus*, 149 F. App'x 897, 899 (11th Cir. 2005) (recognizing that "any amendment would be futile" when "no amendment will create diversity jurisdiction" and where "nothing will confer federal question jurisdiction under [federal statutes]"); *Hatcher v. Ala. Dep't of Hum. Servs., Child Support Enf't Div.*, 747 F. App'x 778, 782 (11th Cir. 2018) (holding that "the district court did not abuse its discretion in denying leave to amend when it concluded that amendment would be futile based on *Younger* grounds"). Our careful review of the Dixons' complaint—and its many irreparable failings—leaves us with the firm impression that allowing them to amend *again* would only result in another dismissal.

*    *    *

The Dixons may be dissatisfied with the outcome of Mr. Dixon's state-court case. But their frustration doesn't authorize us to overturn, or interfere with, the decisions of the Fourth DCA. Nor does it empower us to adjudicate a case that was filed two years *after* the statute of limitations expired. So, after careful review, we **ORDER and ADJUDGE** as follows:

(1) As to the Defendant, Ericka N. Chase, the Motion to Dismiss [ECF No. 193] is **DENIED as moot**.

(2) As to Joseph Abruzzo in his official capacity as the Clerk of the Circuit Court & Comptroller, Palm Beach County, the Motion to Dismiss [ECF No. 193] is **GRANTED**.

(3) The Third Amended Complaint [ECF No. 191] is **DISMISSED with prejudice** (in part) and **without prejudice** (in part) and, in either case, **without leave to amend**.

**DONE AND ORDERED** in the Southern District of Florida on the 24th day of June 2022.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record
       Roy and Blanche Dixon, *pro se*